UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KENNETH THOMAS,

Petitioner,

-v-

UNITED STATES OF AMERICA,

Respondent.

19-CV-5675 (PAE)
01-CR-579 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Petitioner Kenneth Thomas, proceeding *pro se*, seeks a writ of error *coram nobis* to vacate his November 13, 2001 guilty plea to one count of access device fraud in violation of 18 U.S.C. §§ 1029(a)(2) and 2. The Petition claims that Thomas's guilty plea should be vacated because his counsel was ineffective by, *inter alia*, failing to sufficiently inform Thomas of the immigration consequences of his plea. For the following reasons, the Court dismisses Thomas's petition.

## I. Background

Thomas is a citizen of the United Kingdom and has been a lawful permanent resident of the United States, having legally entered the United States in or about 1982. *See* Dkt. 6 ("Pet. Reply") at 1, 3.[1] On May 17, 2001, Thomas was charged by Complaint with bank fraud, in violation of 18 U.S.C. §§ 1344 and 2. No. 01 Cr. 579, Dkt. 1 ("Compl."). The Complaint alleged that Thomas had defrauded Chase Manhattan Bank ("Chase") by withdrawing approximately $13,250 from the accounts of four accountholders without authorization and

[1] Unless otherwise indicated, a docket citation refers to the docket of No. 19 Civ. 5675, in which Thomas's *coram nobis* petition was filed.

transferring those funds into PayPal accounts created under various names including "Kenneth Thomas." *Id.* at 1–2. Thomas had been employed as a computer consultant by the same company where the four accountholders worked. *Id.* at 3. At least one check, the Complaint alleged, had been drawn on these PayPal accounts, made payable to "Kenneth Thomas," and deposited into an account in the name of "Kenneth Thomas" at Chase. *Id.* at 2–3.

In support of these charges, the Complaint alleged that, on May 8, 2001, a United States Secret Service agent had examined Thomas's home computer with his consent and found that the IP address of Thomas's computer matched the IP address used to access the PayPal accounts. *Id.* at 3. A warranted search of Thomas's home on May 9, 2001 revealed several checks that had been printed by a computer, appeared counterfeit, and had been drawn on the bank accounts of the four employees. *Id.* Each employee's account had been debited after a check made payable to Thomas had been presented and deposited at Chase. *Id.* None of the checks had been written or authorized by the employees. *Id.* A later search of Thomas's former company on May 16, 2001, revealed that someone had broken into the company's personnel files, which contained social security numbers and bank account information of employees. *Id.* at 4.

On June 15, 2001, Thomas was indicted on three charges: (1) bank fraud, (2) wire fraud in violation of 18 U.S.C. §§ 1343 and 2, and (3) fraud in connection with an unauthorized access device, in violation of 18 U.S.C. §§ 1029(a)(2) and 2. No. 01 Cr. 579, Dkt. 8. As to this latter charge, the Indictment alleged that Thomas had fraudulently used the bank account and routing numbers of accountholders to transfer funds, without authorization, from those accounts to PayPal accounts under his control. *Id.* ¶ 3.

On November 13, 2001, Thomas pled guilty before the Hon. Michael B. Mukasey, pursuant to a plea agreement, to Count Three, charging access device fraud. *See* No. 01 Cr. 579,

Dkt. 17 ("Plea Tr.") at 2, 15. At the plea hearing, Thomas stated, under oath, that he had discussed the case and potential defenses with his counsel and was satisfied with his counsel's representation; that neither he nor anyone else had been threatened in connection with the plea; and that he had not been forced to plead guilty. *Id.* at 4–5, 10–11. The Government proffered evidence establishing the offense, including evidence found on Thomas's computer, statements from witnesses, and inculpatory statements by Thomas. *See id.* at 13–14. The evidence, the Government stated, showed that Thomas had used his computer to open PayPal accounts, which—using account and routing information of others without their permission—he had used to obtain approximately $13,000 belonging to the accountholders between April and May 2001. *See id.*

On February 15, 2002, Judge Mukasey sentenced Thomas to a term of 36 months' probation, subject to special conditions that he serve six months in home confinement and pay $12,000 in restitution. No. 01 Cr. 579, Dkt. 20 ("Sentencing Tr.") at 4. On the Government's motion, Judge Mukasey dismissed the remaining counts. *See id.* at 5. Thomas did not file an appeal. *See* Dkt. 1 ("Pet.") at 3. Until October 13, 2005, Thomas paid money towards restitution. *See* No. 01 Cr. 579, Dkt. 25 ("Gov. Opp.") at 2.

On November 21, 2018, Thomas arrived at John F. Kennedy International Airport in New York from a trip abroad and was apprehended by immigration officials, after customs officials had alerted to his 2001 conviction. *See* Pet. Reply at 1–2; Gov. Opp. at 2–3. Thomas was instructed to appear with documentation for inspection at a later date. *See id.* On May 7, 2019, Thomas returned and was served a notice to appear for violation of 8 U.S.C. § 1182(a)(2)(A)(i)(I). *See* Pet. Reply at 2; Gov. Opp. at 3. Thomas was detained pending his removal proceeding,

pursuant to 8 U.S.C. § 1226(c). *Id.* He is currently detained at the Hudson County Correctional Facility in Kearny, New Jersey.[2] Pet. Reply at 2.

On June 17, 2019, Thomas filed the instant Petition, arguing that he is entitled to have his conviction vacated because: (1) neither his attorney, the AUSA, nor Judge Mukasey advised him of the immigration consequences of his guilty plea; (2) his attorney did not advise him of the evidence against him or his defenses; and (3) the Government had threatened him and his family sometime before his plea. *See* Pet. at 5. On June 25, 2019, the Court construed the Petition as a writ of error *coram nobis* and ordered the Government to respond. Dkt. 3. On August 22, 2019, the Government filed a memorandum of law in opposition. Gov. Opp. On September 19, 2019, Thomas filed a reply. Pet. Reply.

## II. Discussion

A writ of error *coram nobis* should issue only where "extraordinary circumstances are present." *Foont v. United States*, 93 F.3d 76, 78 (2d Cir. 1996) (quoting *Nicks v. United States*, 955 F.2d 161, 167 (2d Cir. 1992)). The writ is a "remedy of last resort, strictly limited to those cases in which errors . . . of the most fundamental character have rendered the proceeding itself irregular and invalid." *United States v. Rutigliano*, 887 F.3d 98, 108 (2d Cir. 2018) (internal

[2] Even though Thomas is being held presently in New Jersey, venue is proper in this District because it is the site of Thomas's challenged plea—where "the alleged errors occurred." *Mustain v. Pearson*, 592 F.2d 1018, 1021 (8th Cir. 1979) ("[A] writ [of *coram nobis*] can be filed only in the court where the alleged errors occurred."); *cf. United States v. Morgan*, 346 U.S. 502, 512 (1954) (petition for writ of *coram nobis* concerning whether defendant properly waived his right to counsel for a trial must be heard by trial court); *United States v. Sandles*, 469 F.3d 508, 517 (6th Cir. 2006) (transferring petition for writ of *coram nobis* to court in which defendant was first convicted, where "the alleged errors occurred"); *United States ex rel Lavelle v. Fay*, 205 F.2d 294, 295 (2d Cir. 1953) (petition for writ of *coram nobis* challenging conviction must be heard "before the sentencing court in the district where the records and government officials involved are located"); *Boynton v. Hicks*, No. 02 Civ. 1439 (DC), 2003 WL 22087634, at *3 (S.D.N.Y. Sept. 9, 2003) ("[T]he proper venue for a coram nobis review of ineffective assistance of appellate counsel claims . . . is in the appellate tribunal where the allegedly deficient representation occurred." (internal quotation marks, citation, and emphasis omitted)).

quotation marks and citations omitted). To secure *coram nobis* relief, "a petitioner must show that (1) 'there are circumstances compelling such action to achieve justice,' (2) 'sound reasons exist for failure to seek appropriate earlier relief,' and (3) 'the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ.'" *Id.* (quoting *Foont*, 93 F.3d at 79).

Thomas satisfies the third prong of the *Foont* test: The immigration consequences for Thomas stemming from his 2001 conviction constitute continuing legal consequences from that conviction. *See Kovacs v. United States*, 744 F.3d 44, 49 (2d Cir. 2014). Thomas, however, cannot satisfy the first or the second prongs. As to the first, a petitioner can satisfy this by showing he received ineffective assistance of counsel in his underlying criminal case. *See id.*; *see also Doe v. United States*, 915 F.3d 905, 910 (2d Cir. 2019) ("Ineffective assistance of counsel, including during the plea-bargaining process, is a circumstance compelling the grant of a timely application for *coram nobis* relief."). But when a petition based on a claim of ineffective assistance fails, the writ cannot be granted. *See Shaw v. Artuz*, No. 99 Civ. 9754 (RLE), 2001 WL 1301735, *8 (S.D.N.Y. Oct. 19, 2001) (holding state court's denial of writ of *coram nobis* proper, given petitioner's failure to show ineffective assistance). For the reasons that follow, such is the case here, in that Thomas's principal basis for claiming ineffective assistance of counsel—his counsel's asserted failure to notify him of the potential immigration consequences of his plea—fails to make out a claim of ineffectiveness. And to the extent that Thomas now raises other challenges to his guilty plea, he fails to justify his protracted delay in doing so.

### A. Ineffective Assistance of Counsel Based on Lack of Immigration Guidance

The Petition primarily argues that Thomas received ineffective assistance of counsel under the Sixth Amendment because his counsel ostensibly did not inform him of the potential

immigration consequences of his plea, causing him to accept an unfair plea deal.[3] Pet. at 5. He claims that he would have gone to trial if he had been informed of such consequences. *See* Pet. Reply at 5. A court analyzes a claim of ineffective assistance of counsel under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), under which a movant must show that (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defense. *Doe*, 915 F.3d at 910. Thomas cannot establish either.

**1. Objective Standard of Reasonableness**

Thomas's counsel's performance was not deficient for failure to notify Thomas of the immigration consequences of his guilty plea, because at the time, counsel did not have a legal obligation to do so. Not long after Thomas's plea, the Second Circuit held, consistent with the law at the time, that "an attorney's failure to inform a client of the deportation consequences of a guilty plea, without more, does not fall below an objective standard of reasonableness." *United States v. Cuoto*, 311 F.3d 179, 187 (2002). To be sure, eight years later, the Supreme Court held to the contrary in *Padilla v. Kentucky*, 559 U.S. 356 (2010). But the Court has also held that "*Padilla* does not have a retroactive effect." *Chaidez v. United States*, 568 U.S. 342, 344 (2013). Because under the law at the time of the plea, Thomas's counsel was not under a legal obligation to inform his client of the immigration consequences, his (alleged) failure to do so did not make his representation ineffective and hence does not provide a basis for *coram nobis* relief.

---

[3] Thomas makes two other claims: that his attorney did not review the evidence and his defenses with him and that the Government threatened his family. These claims are each dubious insofar as each is inconsistent with Thomas's plea allocution. *See* Plea Tr. at 4–5, 10–11. Nevertheless, because the Court disposes of these claims on the grounds that Thomas unreasonably delayed in bringing them, *see infra* pp. 10–12, it has no occasion to resolve these claims on the merits.

Thomas's counsel did, though, have a duty not to make affirmative misrepresentations to Thomas regarding the immigration consequences of a guilty plea. *Cuoto*, 311 F.3d at 188 (holding that an "affirmative misrepresentation by counsel as to the deportation consequences of a guilty plea is . . . objectively unreasonable"); *see also Doe*, 915 F.3d at 910–11 (finding counsel acted unreasonably where counsel, in response to question, wrongly advised his client that he "should not have a problem with the immigration authorities and should not face deportation" and where counsel conceded misinforming client about mandatory deportation consequences). But Thomas does not claim, and the record does not suggest, that affirmative misrepresentations were made in this case. Rather, the Petition repeatedly faults Thomas's trial counsel for not advising him about the immigration consequences of his plea. *See* Pet. at 5, 13; *see also* Pet. Reply at 5 (arguing counsel "had a responsibility to discuss the immigration consequences with Thomas").

The Petition therefore fails to allege objectively unreasonable behavior by counsel.

**2. Prejudice**

To satisfy *Strickland*'s second, "prejudice," prong, Thomas must show that (1) "he placed particular emphasis on immigration consequences in deciding whether or not to plead guilty," and (2) "but for counsel's unprofessional errors, there was a reasonable probability that [he] could have negotiated a plea that did not impact immigration status or that he would have litigated an available defense." *See Doe*, 915 F.3d at 911 (brackets and citations omitted). Thomas has not demonstrated either of these.

First, although Thomas now claims that he would not have pled guilty and instead would have "take[n] his chances by going to trial," Pet. Reply at 5, such "*post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies" are insufficient to satisfy this requirement, *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017). A court instead

must "look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* For example, a petitioner may point to evidence that he asked about such consequences before pleading guilty. In *Lee*, for instance, the Supreme Court found that such consequences had been a "determinative issue" in the decision to plea because the petitioner had "asked his attorney repeatedly whether there was any risk of deportation," both petitioner and his counsel testified that he would have gone to trial had he known of the risk of deportation, and petitioner only pled after his counsel assured him that the judge's warning about immigration consequences was a "standard warning."[4] *Id.* at 1967–68; *see also Doe*, 915 F.3d at 911–12 (noting multiple instances in which petitioner had asked about his immigration situation prior to plea); *Whyte v. United States*, Nos. 08 Cr. 1330, 14 Civ. 3598 (VEC), 2015 WL 4660904, at *7 (S.D.N.Y. Aug. 6, 2015) (petitioner had "repeatedly asked his attorney whether the plea would affect his immigration status" (internal quotation marks and citation omitted)). Thomas, in contrast, does not claim that he ever asked his counsel about the immigration consequences of a guilty plea, or evidenced concern about this subject in any other fashion at the time.

[4] In finding that the petitioner placed emphasis on the lack of immigration consequences, the Supreme Court in *Lee* noted, as corroborative evidence, Lee's deep ties to the United States: Lee was a lawful permanent resident who had lived in the United States for three decades, had two businesses here, and was the only family member who could care for his elderly parents living here. 137 S. Ct. at 1968. Lee had moved to the United States from South Korea at the age of 13 and had never returned. *See id.* at 1962–63, 1968. Thomas can also assert some strong ties to this country: He states that, although born in the United Kingdom, he has no ties there; he entered the United States as a lawful permanent resident around 1982; and his family lives here. *See* Pet. Reply at 1, 3. But without any evidence that he placed emphasis on immigration consequences at the time of the plea, Thomas's U.S. ties are insufficient to carry his burden. *See, e.g.*, *Rodriguez v. United States*, 730 F. App'x 39, 43–44 (2d Cir. 2018) (noting that, in addition to petitioner's connections to the United States, counsel had given him "early and continued assurances that there were *no* immigration consequences to worry about," and had repeatedly emphasized at the plea proceeding that petitioner's "sole concern" was to ensure that she was able to continue to work in the United States and support her family (emphasis in original)).

The transcript of Thomas's plea is similarly devoid of any indication of concern for such consequences. And the Presentence Investigation Report ("PSR") included a special condition requiring Thomas to "comply with the directives of the Immigration and Naturalization Service and the Immigration Laws," given "Thomas's 'immigration status in the United States' and the possibility of 'proceedings relative to his status.'" Gov. Mem. at 7 (quoting PSR). There is no indication that Thomas alerted to these provisions or raised concerns at the time of sentencing about potential immigration consequences.

Second, the Court cannot find a reasonable probability that, had Thomas's attorney affirmatively alerted him to potential immigration consequences of a guilty plea, he would have obtained an outcome lacking those consequences. There is no basis to conjecture that Thomas could have negotiated a guilty plea devoid of potential adverse immigration consequences. And the guilty plea here gave Thomas a large benefit. Absent credit for accepting responsibility, Thomas faced a then-mandatory Sentencing Guideline range of 10–16 months' imprisonment, with no opportunity for probation. Gov. Mem. at 7. With such credit, however, Thomas became eligible for—and received—a non-custodial sentence. *See* Sentencing Tr. at 4. In light of this palpable benefit, it is not credible to claim that the "sole reason" for Thomas's guilty plea was counsel's mistaken belief that the plea would not carry adverse immigration consequences. *See Kovacs*, 744 F.3d at 53 (finding petitioner could have negotiated alternative plea where only reason for plea was dispelling immigration consequences). There is every reason to believe, instead, that the prospect of avoiding incarceration was a principal driver of Thomas' decision to plead guilty. In short, Thomas has elicited "no evidence whatsoever—other than speculation—that such a deal would have been available to him." *Santana v. United States*, No. 12 Civ. 2150

(JSR) (GWG), 2013 WL 717284, at *4 (S.D.N.Y. Feb. 28, 2013), *report and recommendation adopted*, 2013 WL 1499406 (S.D.N.Y. Apr. 11, 2013).

Separately, Thomas has also failed to show a reasonable probability that he had a defense available at trial. "[A] defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial." *Lee*, 137 S. Ct. at 1966. Here, as recited in the Complaint and proffered at the time of the plea, the Government's evidence against Thomas was potent and varied. It included evidence gleaned from Thomas's computer, evidence that the IP address of that computer matched the IP address used to create the fraudulent accounts, evidence obtained from Thomas's former employer, witness statements, and admissions by Thomas himself. *See* Plea Tr. at 13–14; Compl. at 2–4. And the Petition does not allege that Thomas had a non-frivolous defense available at trial. Petitioners in such circumstances, who have "no plausible chance of acquittal at trial" and tangible benefits from pleading guilty, are fairly "highly likely . . . [to] accept [such] a plea if the Government offers one." *Lee*, 137 S. Ct. at 1966.

The Court therefore finds that Thomas has not demonstrated ineffective assistance of counsel as to the immigration consequences of his plea.

**B. Thomas's Delay in Pursuing Other Claims**

Apart from Thomas's claim that his counsel failed to notify him of the immigration consequences of his guilty plea, which the Court assumes *arguendo* was timely made,[5] the

[5] The Petition raised Thomas's immigration-related concerns less than a year after Thomas was detained on account of the 2001 conviction. The Court assumes that, if Thomas had theretofore been unaware of the immigration consequences of his plea, he was justified in not bringing that particular claim until his immigration detention. *See United States v. Hernandez*, 283 F. Supp. 3d 144, 153–54 (S.D.N.Y. 2018) (analyzing when petitioner filed immigration-related *coram nobis* in comparison to when she received deportation order).

Petition also faults Thomas's counsel for allegedly failing to discuss the evidence and potential trial defenses with him before the plea, and claims that the Government had threatened his family prior to the plea.[6] *See* Pet. at 5. The Court finds that these challenges, which Thomas first brought 17 years after the plea, are untimely.

"A petition for writ of *coram nobis* may be 'time barred if the petitioner cannot provide a justified reason for failure to seek appropriate relief at an earlier date.'" *Hernandez*, 283 F. Supp. 3d at 153 (citation omitted). "While no statute of limitations governs the filing of a *coram nobis* petition, a petitioner must still show sound reasons for the delay in bringing the petition." *Doe*, 915 F.3d at 915 (internal quotations, brackets, and citation omitted). The court's timeliness inquiry is completed on a case-by-case basis, with the "critical inquiry" being "whether the petitioner knew or should have known earlier of facts underlying the claim for *coram nobis* relief." *Hernandez*, 283 F. Supp. 3d at 153 (citation omitted). "If petitioner does not proffer a sound reason for delay, 'courts have held that such petition should be dismissed if its filing has been delayed for more than several years.'" *Id.* (brackets and citation omitted).

In his Petition and his reply brief, Thomas, tellingly, does not offer any explanation for his 17-year delay in bringing these claims. The Petition alleges that his counsel failed to discuss the evidence and his defenses with him and that his family members had been threatened before the guilty plea, causing him to decide to enter that plea. But assuming these claims to be true, Thomas was aware of both circumstances at the time of his plea and of his sentencing, yet failed

---

[6] The Petition separately states that Thomas has changed his life for the better since the time of his plea, and asserts that his family would suffer hardship from his deportation. *See* Pet. at 6, 8. These considerations, although sympathetic, are not germane to Thomas's *coram nobis* petition, which turns on whether Thomas has a valid basis to challenge his guilty plea. *See Hebron v. United States*, Civ. No. WDQ-12-1146, Cr. No. WDQ-08-0086, 2013 WL 1635593, at *6 (D. Md. Apr. 15, 2013) (denying *coram nobis* petition despite petitioner's "family members' regrettable illness").

to raise any such concerns at either proceeding or for many years thereafter. Significantly, too, Judge Mukasey's questions to Thomas during his plea hearing addressed both topics, putting Thomas on notice that these areas presented potential impediments to a valid guilty plea. In response, Thomas, notably, testified that he had discussed the case with his counsel, including possible defenses, and that he was satisfied with his counsel's representation; and that neither he nor any other person had been threatened in connection with his guilty plea. Plea Tr. at 4–5, 10–11. The Court therefore finds Thomas's *coram nobis* petition, to the extent based on such claims, untimely.

**CONCLUSION**

For the foregoing reasons, the Court denies Thomas's Petition for a writ of error *coram nobis*. The Court declines to issue a certificate of appealability and certifies that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

The Clerk of Court is respectfully directed to terminate the motion pending at docket one and to close this case. The Clerk of Court is further instructed to mail a copy of this order to Thomas.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: June 23, 2020
New York, New York